# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| INTERNATIONAL REFUGEE ASSISTANCE PROJECT, INC.,<br><br>One Battery Park Plaza, 4th Floor<br>New York, NY 10004<br><br>　　　　　　　　Plaintiff,<br><br>　　v.<br><br>UNITED STATES DEPARTMENT OF STATE<br><br>600 19th Street, NW<br>Washington, DC 20024<br><br>　　　　　　　　Defendant. | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF FOR VIOLATION OF THE FREEDOM OF INFORMATION ACT, 5 U.S.C. § 552** *et seq.*<br><br>Civil Action No. 1:22-cv-2277 |

## INTRODUCTION

1. This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.*, seeking to compel the U.S. Department of State ("DOS") to immediately release records made after January 1, 2021, relating to humanitarian immigration and resettlement pathways for Afghan nationals. These include records relating to the processing of Afghans being referred to and applying for refugee resettlement through the U.S. Refugee Admissions Program ("USRAP"), including but not limited to the newly-created P-2 designation and P-1 referral process for Afghan nationals as well as certain statistical data; records relating to the processing of Special Immigrant Visa ("SIV") applications of Afghan nationals; and records relating to the processing of humanitarian parole applications and the issuance of boarding foils for Afghan nationals at U.S. embassies and consulates.

2. In the aftermath of the United States' military withdrawal from Afghanistan and subsequent Taliban takeover, methods that allow Afghans to seek safety in the United States, like USRAP, the SIV program, and humanitarian parole, are as important as they have ever been.

3. Despite efforts to evacuate vulnerable Afghans after the Taliban takeover, thousands who helped the U.S. mission in Afghanistan, as well as their family members, were left behind.

4. The requested information holds significant value to Plaintiff the International Refugee Assistance Project, Inc. ("IRAP") and other advocates because it will help them to understand how recent changes in procedures affect applicants. Additionally, the statistical data requested will enable IRAP and the public to evaluate the effectiveness of these changes, including the extent to which the government is processing and deciding applications. Obtaining this information in a timely fashion is critical: many of the Afghan nationals at issue risk being killed by the Taliban should DOS be permitted to continue to delay processing this request.

5. In particular, one year ago today, DOS announced a new Priority 2 designation for Afghan nationals to make refugee processing available to U.S.-affiliated Afghans who did not qualify for the SIV program. More than a year later, details regarding the P-2 program and related P-1 referral processing are still unclear to the public, including how many, if any, Afghans have been granted refugee status under the program.

6. Additionally, the SIV program run by DOS serves Afghans at risk because of their employment by the United States. These individuals face threats of imminent harm and death from the Taliban, and delays in the SIV program have life-or-death consequences.

7. Other processes in which DOS is engaged, including humanitarian parole, present similar issues for Afghan nationals facing threats of harm or death. Public information shows that humanitarian parole processing, like the SIV program, is significantly delayed and applicants have incomplete information about the DOS-run parts of the process, leaving many Afghans and individuals seeking to help Afghans with these processes in the dark.

8. In a letter dated March 31, 2022, submitted via the DOS FOIA Portal, IRAP submitted a FOIA request. In this FOIA request, IRAP sought disclosure of the above-referenced records related to humanitarian pathways for Afghan nationals. DOS initially denied expedited processing, and only after a June 29, 2022, appeal, did DOS acknowledge that a compelling need existed and grant expedited processing for the request.

9. The FOIA statute requires that DOS make a determination, with specificity, as to which categories of documents it will produce within 20 business days of a FOIA request. To date, however, 85 business days since its initial request, and despite the grant of expedited processing, IRAP has yet to receive the mandatory determination required by FOIA or any documents responsive to its request.

10. Immediate disclosure of the requested records is necessary to inform applicants, advocates, and the public about the recent changes to refugee, SIV, and humanitarian parole processing for Afghans, along with the agency's performance in processing refugee applications. Only with a better understanding of these pathways can Afghan nationals make plans to reunify with family members and secure their safety in the United States.

11. IRAP thus now brings suit under FOIA for injunctive and other appropriate relief.

## JURISDICTION AND VENUE

12. This Court has jurisdiction pursuant to 5 U.S.C. §§ 552(a)(4)(B), (a)(6)(C)(i), (a)(6)(E)(iii). Because this action arises under FOIA against an agency of the United States, this Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

13. Venue is proper in this District under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. §§ 1391(e)(1) as Defendant resides in this District.

14. This Court has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant. 5 U.S.C. §§ 552(a)(4)(B).

15. The Plaintiff has exhausted any and all administrative remedies in connection with this FOIA request.

## PARTIES

16. Plaintiff IRAP is a 501(c)(3) nonprofit and nonpartisan organization that organizes law students and lawyers to develop and enforce a set of legal and human rights for refugees and other displaced persons. IRAP utilizes media and systemic policy advocacy, direct legal aid, and impact litigation to serve the world's most persecuted individuals and empower the next generation of human rights leaders. IRAP publishes reports, know-your-rights documents, and other educational materials that are widely disseminated to the public, including through its website. These materials are made available to everyone—including tax-exempt organizations, non-profit groups, lawyers, law students, refugees, and other displaced people—free of charge. IRAP also maintains a blog, publishes an electronic newsletter distributed to subscribers via email, and releases information via social media platforms such as Twitter and Facebook.

17. Defendant DOS is a federal agency in the Executive Branch of the United States Government pursuant to 5 U.S.C. §§551(1) and 552(f). It is charged with carrying out U.S. foreign policy and international relations and, as such, oversees and administers the Afghan SIV program, assists with processing of Afghans referred to and applying for refugee resettlement through USRAP (including Afghan P-1/P-2 referral processing), and assists with the processing of humanitarian parole applications through its embassies and consulates. Upon information and belief, DOS has possession and control of the records sought in the requests.

## STATEMENT OF FACTS

### I. Background – Humanitarian Pathways for Afghans

18. In July 2021, President Biden announced that the U.S. military mission in Afghanistan would conclude by the end of August 2021.[1]

19. During the withdrawal of the U.S. military presence in Afghanistan, the Taliban entered Kabul and seized control of the Afghan elected government.[2]

20. Thousands of Afghan allies under threat from the Taliban remain in hiding throughout Afghanistan or have fled to neighboring countries.[3] There have been numerous reports of

---

[1] *Remarks by President Biden on the Drawdown of U.S. Forces in Afghanistan*, The White House (July 8, 2021), available at https://www.whitehouse.gov/briefing-room/speeches-remarks/2021/07/08/remarks-by-president-biden-on-the-drawdown-of-u-s-forces-in-afghanistan/.

[2] Cong. Rsch. Serv., *U.S. Military Withdrawal and Taliban Takeover in Afghanistan: Frequently Asked Questions* 1 (Sept. 17, 2021), available at https://crsreports.congress.gov/product/pdf/R/R46879.

[3] *See The Afghan Allies Left Behind*, Wall Street J. (Aug. 15, 2021), https://www.wsj.com/articles/biden-withdrawal-afghanistan-allies-translators-visa-miervaldis-human-rights-taliban-11629054976 (last visited Sept. 22, 2021) (explaining that there are likely over 50,000 Afghan allies who would qualify for SIVs that remain in Afghanistan). *See also* Zia ur-Rehman, *Afghans Flee to Pakistan. An Uncertain Future Awaits*, N.Y. Times (Sept. 8, 2021), available at https://www.nytimes.com/2021/09/08/world/asia/pakistan-afghanistan-refugees.html (explaining that Pakistan expects nearly 700,000 Afghan refugees to cross the border).

threats and violence against journalists, U.S.-affiliated Afghans, LGBTQ+ individuals, women, and religious minorities in Afghanistan, which further highlights the urgency of their applications.[4]

21. Afghans who assisted the U.S. live in constant fear for their lives and are seeking information about all available pathways to safety. Many of these Afghans are IRAP clients.

*Special Immigrant Visa Programs*

22. SIVs are allocated to Afghans who were employed by or on behalf of the United States and face an ongoing serious threat due to that affiliation. DOS considers that *every* SIV applicant who has qualifying employment to be under an *ongoing serious threat*.[5]

---

[4] Hum. Rights Watch, *Afghanistan: Taliban Kill, 'Disappear' Ex-Officials Raids Target Former Police, Intelligence Officers* (Nov. 30, 2021), available at www.hrw.org/news/2021/11/30/afghanistan-taliban-kill-disappear-ex-officials; Associated Press, *Watchdog: 30 Recent Cases of Violence Against Afghan Journalists*, ALJAZEERA (Oct. 28, 2021), available at www.aljazeera.com/news/2021/10/28/afghanistan-journalists-watchdog-violence-taliban-media; Ben Wescott, *Angry and Afraid, Afghanistan's LGBTQ Community Say They're Being Hunted Down After Taliban Takeover*, CNN (Sept. 18, 2021), available at www.cnn.com/2021/09/17/middleeast/afghanistan-lgbtq-evacuation-intl-hnk-dst/index.html.

[5] State Dep't, Foreign Affs. Manual, 9 FAM 502.5-12(B)(a)(4) (2022), https://fam.state.gov/FAM/09FAM/09FAM050205.html. Not only does the DOS recognize such urgency by categorizing Afghan SIV applicants as under an ongoing serious threat, but so do United States courts. The District Court for the District of Columbia, for instance, remarked that delay in SIV processing places Afghan lives in danger, causes Afghan nationals to "live with the stress and anxiety of trying to protect themselves and their families from danger," prevents Afghan nationals from adequately planning for the future, and "harms national interests, because delays undermine other countries' trust in this country's commitments." *See Afghan & Iraqi Allies Under Serious Threat Because of Their Faithful Serv. To the United States v. Pompeo*, No. 18-CV-01388 (TSC), 2019 WL 4575565, at *8 (D.D.C. Sept. 20, 2019). In addition to acknowledging the imminent harm faced by Afghan nationals awaiting SIV processing, the Court also found that "the probability of actual harm and the related stress are compounded each day an applicant waits for adjudication," and "the level of uncertainty increases for some applicants the longer they wait for processing because the passage of time makes it more difficult to obtain the requisite verification and information to pass background checks." *Id.* at *9.

23. Delays in the SIV program and changes to processing have life-and-death consequences for the thousands of Afghan principal applicants and their family members in the SIV process.[6] Many of those killed in recent years were stuck in the SIV application pipeline at the time of their deaths.[7]

24. Public reporting indicates that DOS is collaborating with the Department of Defense to conduct employment verification for some SIV applicants.[8] This project is intended to "expedite and streamline…one of the most burdensome portions of the [SIV] process" but there is almost no public information on how it works and whether it is working, leading to confusion and speculation among impacted communities including Afghan allies, military veterans, and other advocates.[9]

*U.S. Refugee Admissions Program*

25. In August 2021, DOS created a priority category to allow "Afghans who don't qualify [for the SIV program] but who helped us and deserve our help" to apply for the U.S. Refugee

---

[6] *See e.g.*, Janis Shinwari, Mariah Smith, Philip Caruso, Jason Gorey, Fritz Sleigher, Chris Karwacki, & James Miervaldi, *Over 300 Afghan Translators and Family Killed While Serving the U.S.* (Sept. 19, 2020), available at https://realcleardefense.com/articles/2020/09/19/over_300_afghan_translators_and_family_killed_while_serving_the_us_577997.html.

[7] *See e.g.*, *id.*

[8] *See, e.g.*, Dep't of State, *Report to Congress on Joint Department of State/Department of Homeland Security Report: Status of the Afghan Special Immigrant Visa Program*, available at https://travel.state.gov/content/dam/visas/SIVs/Afghan-Public-Quarterly-Report-Q1-January-2022.pdf (last visited July 29, 2022); Afghan War News, *Project Rabbit and Afghan SIVs*, available at https://afghanwarnews.info/taliban-victory-2021/project-rabbit.htm (last visited Mar. 13, 2022) ("It probably is asking too much for the Department of Defense to offer an explanation of why the input form was retired and to offer a course of action for those who wish to get their documents to Project Rabbit officials…. There is very little official mention of Project Rabbit and almost no information is provided to the public by the DOS or DOD on this topic.")

[9] *Id*; *see also* Dep't of State, *Special Immigrant Visas for Afghans – Who Were Employed by/on Behalf of the U.S. Government*, available at https://travel.state.gov/content/travel/en/us-visas/immigrate/special-immg-visa-afghans-employed-us-gov.html (last visited July 29, 2022) (noting changes to SIV processing as recently as July 20, 2022).

Admissions Program ("USRAP").[10] However, USRAP has been plagued by delays and a temporary suspension, even as the administration has looked into options to expedite refugee processing for Afghans.[11]

26. As of January, media reports indicated that DOS had received more than 11,000 P-2 referrals to the refugee program but that only 330 were complete enough to move forward.[12] The USRAP P-2 designation encompasses Afghans who worked for entities that received U.S. government funding through contracts, grants, awards, and cooperative agreements, as well as those employed by U.S. media and NGOs. However, DOS has only provided detailed public information to media and NGO employers, leaving many individuals seeking to help Afghans with referrals in the dark.[13]

27. The government has also suggested that Afghans may be referred for refugee resettlement through the "P-1" individual referral pathway but has provided limited information on how an applicant might access the program.

---

[10] U.S. Dep't of State, *Secretary Antony J. Blinken Remarks to the Press on the Announcement of a U.S. Refugee Admissions Program Priority 2 (P-2) Designation for Afghan Nationals* (Aug. 2, 2021), available at https://www.state.gov/secretary-antony-j-blinken-remarks-to-the-press-on-the-announcement-of-a-u-s-refugee-admissions-program-priority-2-designation-for-afghan-nationals/.

[11] *See, e.g.*, Miriam Jordan, *Afghans Who Bet on Fast Path to the U.S. Are Facing a Closed Door*, N.Y. Times (Feb. 16, 2022), available at https://www.nytimes.com/2022/02/16/us/afghan-refugees-humanitarian-parole.html (noting that the refugee program takes several years); Laura Gomez, *U.S. Halts Resettlement of New Refugees, Prioritizes Release of Afghan Evacuees* (Nov. 15, 2021), available at https://www.azmirror.com/2021/11/15/u-s-halts-resettlement-of-new-refugees-prioritizes-release-of-afghan-evacuees/; Stef W. Kight & Jonathan Swan, *Scoop: White House Plans Expedited Resettlement for Afghan Refugees*, Axios (Jan. 25, 2022), available at https://www.axios.com/biden-afghan-refugee-fast-track-qatar-afghanistan-57d744d0-7bf9-4ab1-a947-6be7a23a1102.html.

[12] *See, e.g.*, Alexander Ward et al., *Looks Like' House Approps Will Allocate $740B for Defense*, Politico (Jan. 4, 2022), available at https://www.politico.com/newsletters/national-security-daily/2022/01/04/looks-like-house-approps-will-allocate-740b-for-defense-495591.

[13] Refugee Processing Ctr., *SIV/Iraqi & Syrian P-2/Afghan Referrals*, https://www.wrapsnet.org/siv-iraqi-syrian-afghan-referrals/ (last visited June 28, 2022).

28. Limited DOS guidance has left applicants guessing on key issues—for example, DOS has provided information to Afghans only about a handful of countries where refugee processing for Afghans is *not* available but has not provided information confirming where refugee processing is definitively available or how processing timelines could vary for different locations.[14]

*Humanitarian Parole*

29. Since the fall of Kabul in August 2021, thousands of Afghan individuals have applied for humanitarian parole. Humanitarian parole allows individuals who may be inadmissible or otherwise ineligible for admission into the United States to enter the country for a temporary period.

30. Applicants face grave danger under the Taliban-governed Afghanistan and others live in tenuous situations in third countries. Yet they face significant delays in processing, stymying their ability to access protection.

31. Although U.S. Citizenship and Immigration Services accepts and adjudicates humanitarian parole applications, DOS's embassies and consulate abroad manage the required biometrics and boarding foil issuance processes for applicants.[15]

*Continuing Harms Faced by Afghan Nationals*

32. The fall of Kabul has only deepened the urgency of the need for accessible humanitarian pathways. In February 2022, the Association of Wartime Allies released a report illustrating the imminent risk of harm that Afghans face as a result of delays in SIV

---

[14] Dep't of State, *Population, Refugees, and Migration* (Feb. 11, 2022), available at https://www.wrapsnet.org/documents/Information%20for%20U.S.-Affiliated%20Afghan%20Nationals.pdf.

[15] U.S. Citizenship and Immigration Services, *Humanitarian and Significant Public Benefit Parole Program* (Mar. 2021), available at https://www.uscis.gov/sites/default/files/document/presentations/9-IRAD-Parole-Overview.pdf.

processing. In this report based on a survey of thousands of Afghan SIV applicants, there was a universal desperation at the fact that the "United States failed to evacuate the vast majority of our SIV eligible allies."[16]

33. Of those surveyed in the six months since the evacuation, "nearly 30% have been imprisoned by the Taliban at some point and 52% have been stopped and questioned."[17] Fear has gripped the SIV population, "with 84% reporting going without medical care due to angst about leaving the home and receiving reprisals from the Taliban."[18] In addition to these fears, 77% of surveyed Afghans have already "witnessed some form of physical violence against others for their service to the United States."[19]

34. In June 2022, the Association of Wartime Allies reported that 92% of Afghan women and men have reported loss of a job since the U.S. evacuation, which is up from 88% in February.[20] The levels of fear have risen with the continual uncertainty over escaping persecution, with 97% reporting fear of leaving their home."[21]

35. Afghans who have applied for refugee status, humanitarian parole, and SIVs must decide whether to make difficult, expensive, and dangerous journeys to third countries, and the U.S. government has provided insufficient information about processing to aid them as they make those decisions. Without greater access to information about the SIV, humanitarian parole, and refugee application processes, Afghans with pending applications will be left without solutions to reach safety and will likely experience significant harm.

---

[16] Kim Staffieri, Matt Zeller, & Michael Trudeau, *The Left Behind Afghans*, Association of Wartime Allies (Feb. 2022), available at https://www.wartimeallies.co/_files/ugd/5887eb_6334755bb6f64b009b629f3513a16204.pdf.
[17] *Id.*
[18] *Id.*
[19] *Id.*
[20] *Id.* at 2.
[21] *Id.*

**II.     Plaintiff IRAP's First Request for Information under the FOIA and Defendant's Denial of Expedited Processing**

36. In a letter dated March 31, 2022, IRAP submitted a FOIA request by electronic mail to the DOS via the DOS FOIA Portal (the "Request"). A copy of the Request is attached as Exhibit A.

37. The Request sought records from January 1, 2021, to the present disclosing the following:

   a. Any and all guidance, policies, directives, training materials, and similar documents issued regarding the processing of Special Immigrant Visa ("SIV") applications of Afghan nationals, including but not limited to Chief of Mission application processing, Project Rabbit processing, and the transfer of visa applications following the fall of U.S. Embassy Kabul;

   b. The processing of humanitarian parole applications and the issuance of boarding foils for Afghan nationals at U.S. embassies and consulates;

   c. The processing of Afghans being referred to and applying for refugee resettlement through the U.S. Refugee Admissions Program, including but not limited to Afghan P-1 / P-2 referral processing; and

   d. Aggregate data or statistics related to the processing of Afghans being referred to and applying for refugee resettlement through the U.S. Refugee Admissions Program, including but not limited to any data or statistics on the number of refugee referrals applications received, approved, denied, and still pending, broken down by location of the applicant.[22]

---

[22] *See* Exhibit A – FOIA Request Letter.

38. At the same time, IRAP sought expedited treatment of the Request, pursuant to 5 U.S.C. § 552(a)(6)(E) and 22 C.F.R. § 171.11(f) due to the urgent need to inform applicants, other service providers, and the general public about DOS processing of Afghan applications.

39. On April 06, 2022, DOS confirmed receipt of the Request, assigning it control number F-2022-06699. However, DOS denied IRAP's request for expedited processing on the basis that IRAP's Request did not demonstrate a "compelling need" for the requested information[23] (the "Denial"). A copy of the Denial is attached as Exhibit B.

### III.     Plaintiff IRAP's Appeal and Defendant's Approval of Expedited Processing

40. On June 29, 2022, IRAP appealed the Denial (the "June Appeal"). A copy of the June Appeal is attached here as Exhibit C.

41. On July 12, 2022, DOS notified IRAP that it granted the June Appeal, thereby approving expedited processing[24] (the "July Decision"). DOS confirmed that the Request is now placed in an "expedited queue."[25] A copy of the July Decision is attached here as Exhibit D.

42. Despite the grant of expedited processing, DOS has not produced any records responsive to the Request or provided the determination required under FOIA.

43. Defendant's conduct violates the requirements of the FOIA and deprives IRAP the opportunity to timely inform legal representatives, advocates, clients, and the public about the policies and any delays affecting the processing of SIV, humanitarian parole, and refugee applications. IRAP accordingly seeks relief from this Court.

---

[23] *See* Exhibit B – Ref: F-2022-06699, Freedom of Information Act Acknowledgement.
[24] *See* Exhibit D – Appeal Case No: A-2022-00320.
[25] *Id.*

## **CLAIM FOR RELIEF**

### **COUNT I**

### **Violation of the Freedom of Information Act, 5 U.S.C. § 552, for Failure to Respond within the Time Required**

44. Plaintiff incorporates, as fully set forth herein, each and every allegation contained in paragraphs 1–43 above.

45. Under the FOIA, DOS was required to respond to IRAP's March 31, 2022, FOIA request and to notify IRAP of its determination within twenty days of receiving the request. 5 U.S.C. § 552(a)(6)(A).

46. Additionally, after DOS granted IRAP's request for expedited processing on July 12, 2022, DOS was required to process IRAP's request "as soon as practicable." 5 U.S.C. § 552(a)(6)(E)(iii).

47. To date, DOS has not notified IRAP of any determinations relating to the Request or otherwise responded substantively to the Request.

48. The agency has failed to provide a response as required by the law, which amounts to a violation of the FOIA.

### **COUNT II**

### **Violation of the Freedom of Information Act, 5 U.S.C. § 552, for Failure to Conduct a Reasonable Search**

49. Plaintiff incorporates, as fully set forth herein, each and every allegation contained in paragraphs 1–48 above.

50. Defendant has violated its obligation under the FOIA by failing to conduct a reasonable search for records sought by Plaintiff's requests. 5 U.S.C. § 552(a)(6)(A). To date, no such search has been conducted, to Plaintiff's knowledge.

## COUNT III

**Violation of the Freedom of Information Act, 5 U.S.C. § 552, for Failure to Disclose Responsive Records**

51. Plaintiff hereby incorporates, as fully set forth herein, each and every allegation contained in paragraphs 1–50 above.

52. DOS has failed to produce any records responsive to IRAP's March 31, 2022, request.

53. DOS is obligated under 5 U.S.C. § 552(a)(3) to promptly produce records responsive to IRAP'S March 31 FOIA request.

54. Plaintiff has a legal right to obtain such records, and no legal basis exists for DOS's failure to disclose them.

55. DOS's failure to disclose all responsive records violates their statutory obligations to make requested records "promptly available to the public." 5 U.S.C. § 552(a).

56. Additionally, after DOS granted IRAP's request for expedited processing on July 12, 2022, USCIS was required to process Plaintiff IRAP's request "as soon as practicable." 5 U.S.C. § 552(a)(6)(E)(iii).  Which DOS has failed to do so.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court:

   A. Declare that Defendant violated the FOIA by failing to timely make the determination applicable to IRAP's March 22, 2022, request. 5 U.S.C. § 552(a)(6)(A)(i);

   B. Declare that Defendant violated the FOIA by failing to disclose records responsive to IRAP's requests. 5 U.S.C. § 522(a)(6)(A)(i);

   C. Order Defendant to expeditiously conduct a reasonable search for the requested records in accordance with 5 U.S.C. § 552(a)(3)(C);

D. Order Defendant to expeditiously process responsive records in their entirety, to expeditiously disclose the requested records in their entirety, to make the records available to IRAP, and to enjoin Defendant from improperly withholding records;

E. Award Plaintiff's costs and reasonable attorneys' fees in this action as provided by 5 U.S.C. § 552(a)(4)(E); and

F. Grant other such relief as the Court may deem just and proper.

Dated: August 2, 2022

Respectfully submitted,

/s/ Adam Levin
Adam Levin (DC Bar # 460362)
Ryan Stephenson (DC Bar # 1031553)
Matthew Marchiori (DC Bar # 1779642, D.D.C. admission forthcoming)
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, DC 20004
Tel. (202) 637-5600
Fax (202) 637-5910
adam.levin@hoganlovells.com
ryan.stephenson@hoganlovells.com
matthew.marchiori@hoganlovells.com

Jocelyn Hassel (*pro hac vice* forthcoming)
HOGAN LOVELLS US LLP
390 Madison Avenue
New York, NY 10017
Tel. (212) 918-3000
Fax (212) 918-3100
jocelyn.hassel@hoganlovells.com

*Counsel for Plaintiff IRAP*