# EXHIBIT A

# Electronic Submission

## Review

| | |
|---|---|
| **Name** | Mr. Stephen Poellot |
| **Email** | spoellot@refugeerights.org |
| **Address** | 1 Battery Park Plaza, 4th Floor<br>New York, New York 10004 |
| **Telephone** | (516)701-4666 |
| **Fax** | N/A |
| **Date Range** | 01/01/2021 to 03/31/2022 |
| **Description** | IRAP seeks disclosure of: 1. Any and all guidance, policies, directives, training materials, and similar documents issued after January 1, 2021 regarding the processing of Special Immigrant Visa applications of Afghan nationals, including but not limited to Chief of Mission application processing, Project Rabbit processing, and the transfer of visa applications following the fall of U.S. Embassy Kabul. 2. Any and all guidance, policies, directives, training materials, and similar documents issued after January 1, 2021 regarding the processing of humanitarian parole applications and the issuance of boarding foils for Afghan nationals at U.S. embassies and consulates. 3. Any and all guidance, policies, directives, training materials, and similar documents issued after January 1, 2021 regarding the processing of Afghans being referred to and applying for refugee resettlement through the U.S. Refugee Admissions Program, including but not limited to Afghan P-1 / P-2 referral processing. 4. Aggregate data or statistics related to the processing of Afghans being referred to and applying for refugee resettlement through the U.S. Refugee Admissions Program since January 1, 2021, including but not limited to any data or statistics on the number of refugee referrals applications received, approved, denied, and still pending, broken down by location of the applicant. |
| **Expedited Handling** | IRAP requests expedited treatment for this FOIA request pursuant to 5 U.S.C. § 552(a)(6)(E) and 22 C.F.R. 171.11(f). As noted above, IRAP is a "representative of the news media," 5 U.S.C. § 552(a)(4)(A)(iii) and is "primarily engaged in disseminating information.... to the public in general," 22 C.F.R. 171.11(f)(2). There is an "urgency to inform the public concerning the actual or alleged Federal Government activity" 5 U.S.C. § 552(a)(6)(E)(v)(II), see also 22 C.F.R. 171.11(f)(2). In particular, there is an urgent need to inform the public and service providers about the records subject to this request, as they would shed light on the Administration's processing capabilities for Afghans across three key humanitarian pathways—Special Immigrant Visas, humanitarian parole, and refugee processing. Special immigrant visas (SIVs) are allocated to Afghans who were employed by or on behalf of the United States and face an ongoing serious threat due to that affiliation. Following the takeover of Afghanistan by the Taliban, the State Department considers that every SIV applicant who has qualifying employment to be under an ongoing serious threat. Delays in the SIV program and changes to processing have life-and-death consequences for the over 16,000 Afghan principal applicants and their family members in the SIV process. Humanitarian parole provides much-needed humanitarian relief to individuals seeking safety in urgent crises, such as the collapse of the Afghan government after the U.S. withdraw. Since the fall of Kabul in August 2021, thousands of Afghan individuals have applied for humanitarian parole. These applicants face grave danger under the Taliban-governed Afghanistan and others live in tenuous situations on U.S. military bases overseas or on U.S. soil. Yet they face significant delays in processing, stymying their ability to access protection. Although U.S. Citizenship and Immigration Services accepts and adjudicates humanitarian parole applications, the State Department's embassies and consulate abroad manage the required biometrics and boarding foil issuance processes for applicants. In the summer of 2021, the Department of State created a priority category to allow "Afghans who don't qualify [for the SIV program] but who helped us and deserve our help" to apply for the U.S. Refugee Admissions Program (USRAP). However, since that time USRAP has been plagued by delays and a temporary suspension, even as the administration has looked into options to expedite refugee processing for Afghans. There is widespread media attention and strong ongoing public interest surrounding all three of these pathways for Afghans seeking relief from the Taliban. Those applying for SIVs, humanitarian parole and refugee resettlement, the public, |

and service providers urgently seek information about delays and new policies and procedures, as the safety and security of many hinge on these applications. I hereby certify that the foregoing is true and correct to the best of my knowledge and belief.

| | |
|---|---|
| **Maximum Fee** | I am willing to pay $25 for my request. |
| **Requester Category** | A representative of the news media seeking information as part of a news gathering effort and not for commercial use. |
| **Fee Waiver** | I request a waiver of all fees for this request. |

Reason: IRAP is a 501(c)(3) nonprofit and nonpartisan organization that organizes law students and lawyers to develop and enforce a set of legal and human rights for refugees and displaced persons. IRAP utilizes media and systemic policy advocacy, direct legal aid, and impact litigation to serve the world's most persecuted individuals and empower the next generation of human rights leaders. IRAP publishes reports, know-your-rights documents, and other educational materials that are widely disseminated to the public, including through its website. These materials are made available to everyone—including tax-exempt organizations, non-profit groups, lawyers, law students, refugees, and other displaced people—free of charge. IRAP also maintains a blog; publishes an electronic newsletter distributed to subscribers via email; and releases information via social media platforms such as Twitter and Facebook. Material obtained through FOIA are an integral part of this work, and IRAP routinely publishes materials that it obtains through FOIA. Accordingly, IRAP is a "representative of the news media" within the meaning of the FOIA. See 5 U.S.C. § 552(a)(4)(A)(iii) (defining a representative of the news media as an entity that "gathers information of potential interest to a segment of the public" and "uses its editorial skills to turn raw materials into a distinct work, and distributes that work to an audience"); accord Nat'l Sec. Archive v. U.S. Dep't of Def., 880 F.2d 1381, 1397 (D.C. Cir. 1989). Other non-profits who similarly engage in media advocacy, in addition to other policy advocacy and legal work, have been found to be a "representative of a news media" within the meaning of the FOIA. See, e.g., Serv. Women's Action Network v. Dep't of Def., 888 F. Supp. 2d 282, 287-88 (D. Conn. 2012) (concluding that the ACLU is a news representative); Elec. Privacy Info. Ctr. v. Dep't of Def., 241 F. Supp. 2d 5, 10-15 (D.D.C. 2003) (same for the EPIC); Judicial Watch, Inc. v. U.S. Dep't of Justice, 133 F. Supp. 2d 52, 53-54 (D.D.C. 2000) (same for Judicial Watch, a public interest law firm with a website and a radio show). IRAP seeks a full fee waiver on the grounds that disclosure of the requested records is in the public interest and is "likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requestor." 5 U.S.C. § 552(a)(4)(A)(iii). IRAP has no commercial interest in the records requested, and this request aims at furthering public understanding of government conduct: specifically, as described above, the urgent need for the public to understand how it intends to accomplish and how it is doing in the processing of SIVs, humanitarian parole, and refugee applications of Afghan nationals. As IRAP and other service providers work with individuals facing danger in Afghanistan, records to clarify why Afghans face such significant delays in SIV, humanitarian parole and refugee processing are necessary. In any event, as discussed supra, IRAP is a "representative of the news media" and does not seek the records requested for commercial use. Accordingly, should the government assess fees for the processing of this request, those fees should be "limited to reasonable standard charges for document duplication" alone. 5 U.S.C. § 552(a)(4)(A)(ii)(II).

| | |
|---|---|
| **Additional Comments** | Please contact me if additional citations or supporting evidence would be helpful for any aspect of this request. Thank you for your consideration of this request. Please provide the requested records to: Stephen Poellot International Refugee Assistance Project One Battery Park Plaza, 4th floor New York, NY 10004 spoellot@refugeerights.org Please notify us in advance if the cost of producing the documents requested exceeds $100.00. If you have any questions regarding this request, please contact Stephen Poellot at 516-701-4666 or spoellot@refugeerights.org. |

If you encounter difficulty using the electronic submission form, you may wish to use the FOIA Request Walkthrough and the Information Access Guide as guidance for writing your request.

The confidentiality of communications sent via the Internet cannot be guaranteed and the electronic submission of your Freedom of Information Act request is purely voluntary. You may alternatively print the contents of your request letter and submit via fax at (202) 485-1669 or via U.S. mail.

† Although you are not required to provide your email address or telephone number, doing so will help facilitate communication and providing an email address will allow us to provide you with an automatic acknowledgement of receipt.